# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | Case No. 2:15-CR-15 |
| | ) | |
| **SAMUEL LEE COURTNEY** | ) | |
| | ) | |

## UNITED STATES' OPPOSITION TO
## DEFENDANT'S MOTION FOR RELEASE

The United States opposes Samuel Lee Courtney's request for compassionate release. Mr. Courtney requests a reduction in his sentence due to the COVID-19 pandemic and various ailments he suffers from. *See generally* Dkt. No. 1085 ("Mot.").[1] But although Mr. Courtney certainly suffers from chronic medical conditions that put him at a greater risk during this pandemic, he is not a suitable candidate for early release. Specifically, he has failed to exhaust his administrative remedies (a jurisdictional prerequisite), and the factors delineated in 18 U.S.C. § 3553(a) do not support his early release. As a result, his request should be denied.

## BACKGROUND

### 1.  Mr. Courtney's Criminal Proceedings

On February 8, 2016, Mr. Courtney pled guilty to participating in a conspiracy to distribute alpha-PVP (bath salts) in violation of 21 U.S.C. § 846, and using and carrying a firearm in furtherance of that conspiracy in violation of 18 U.S.C. § 924(c).

---

[1] Unless otherwise indicated, all docket references in this brief refer to Case No. 2:15-CR-15.

*See* Dkt Nos. 317 and 456. As described in the Pre-Sentence Investigation Report, Dkt. No. 243 (or "PSR"), and the guilty plea colloquoy, Mr. Courtney was a member of the conspiracy beginning at least in 2013. *See* Tr. of Guilty Plea Hr'g, Dkt. No. 919, at 59-60. He bought substantial amounts of alpha-PVP from other members of the conspiracy, including from Robert Branch, the ringleader, and then packaged and resold the drugs. *See* PSR ¶¶ 238-53. Mr. Courtney carried a firearm during these drug transactions in order to protect himself, and on at least one occasion, traded a firearm for some alpha-PVP. *See* Tr. of Guilty Plea Hr'g., Dkt. No. 919, at 60; Tr. of Sent. H'rg., Dkt. No. 921, at 7.

On July 13, 2016, Mr. Courtney was sentenced to 117 months—57 months for the drug conspiracy and a mandatory, consecutive 60-month sentence for the firearm offense. *See* Dkt. No. 689. To date, Mr. Courtney has served about 56% of his statutory term (assuming continued good behavior) and is expected to be released on January 1, 2024. He is currently housed at FCI Elkton in Elkton, Ohio.

According to his motion, Mr. Courtney claims to have sent a request to the warden for release on April 7, 2020, with a follow-up request for home confinement. *See* Mot. at 32. However, the BOP has not received any request for relief from Mr. Courtney. *See* Ex. 1.[2]

**2.  The BOP's COVID-19 Response**

As the Court is aware, the BOP has undertaken a number of measures and precautions to protect inmates and staff from COVID-19, including quarantines,

---

[2] Exhibit 1 is an email from Robert Jensen, a senior attorney with the BOP.

2

limited contractor and volunteer access, a prohibition on social and legal visits, maximized social distancing within the facilities, and additional cleaning and sanitizing of the prisons.[3] However, notwithstanding those efforts, the government recognizes that FCI Elkton is enduring a serious outbreak, with numerous confirmed cases and multiple deaths.

In an effort to relieve the strain on BOP facilities (like Elkton) and assist inmates who are most vulnerable to the disease and pose the least threat to the community, BOP is exercising greater authority to designate inmates for home confinement. On March 26, 2020, the Attorney General directed the Director of the Bureau of Prisons, upon considering the totality of the circumstances concerning each inmate, to prioritize the use of statutory authority to place prisoners in home confinement. Mem. from Attorney General to BOP Dir. (Mar. 26, 2020).[4] That authority includes the ability to place an inmate in home confinement during the last six months or 10 percent of a sentence, whichever is shorter, *see* 18 U.S.C. § 3624(c)(2), and to move to home confinement those elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g). Congress has also acted to enhance BOP's flexibility to respond to the pandemic. Under the Coronavirus Aid, Relief, and

---

[3] *See*, *e.g.*, https://www.bop.gov/coronavirus/;
https://www.bop.gov/coronavirus/docs/correcting_myths_and_misinformation_bop_c ovid19.pdf.;
https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp
www.bop.gov/resources/news/20200313_covid-19.jsp;
https://www.bop.gov/resources/news/20200319_covid19_update.jsp.

[4] *Available at* https://dojnet.doj.gov/usao/eousa/ole/tables/misc/aghome.pdf.

Economic Security Act, enacted on March 27, 2020, BOP may "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" if the Attorney General finds that emergency conditions will materially affect the functioning of BOP. Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (to be codified at 18 U.S.C. § 3621 note).

On April 3, 2020, the Attorney General gave the Director of BOP the authority to exercise this greater discretion, beginning at the facilities that thus far have seen the greatest incidence of coronavirus transmission. Mem. from Attorney General to BOP Dir. (Apr. 3, 2020).[5] He further clarified his directive should be implemented immediately and "should include all at-risk inmates—not only those who were previously eligible for transfer." *Id*.

BOP is devoting all available resources to executing the directive from the Attorney General. As of this filing, BOP has transferred 2,841 inmates to home confinement, an increase of 99.6 percent since March 26, 2020. U.S. Bureau of Prisons, *COVID-19 Home Confinement Information*.[6] BOP professionals continue to monitor this situation and adjust practices as necessary to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained under judicial orders.

---

[5] *Available at* https://dojnet.doj.gov/usao/eousa/ole/tables/misc/agcovid2.pdf.

[6] *Available at* https://www.bop.gov/coronavirus/ (last visited May 20, 2020).

4

## ARGUMENT

### 1. Mr. Courtney has Failed to Satisfy § 3582(c)'s Exhaustion Requirement

This Court lacks authority to act on Mr. Courtney's motion for compassionate release because he has not sought relief through the BOP. Indeed, as the statute makes clear, the Court may not grant a compassionate release motion unless "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). To that end, courts—including courts in this district—have routinely denied requests for compassionate release where the petitioner has not satisfied the exhaustion requirement. *See United States v. Mattingley*, No. 6:15-cr-00005, Dkt. No. 138, at 6 (W.D. Va. Apr. 1, 2020) (Moon, J.); *see also United States v. Bailey*, No. 1:17-cr-00036, Dkt. No. 174 (W.D. Va. Apr. 7, 2020) (Jones, J.) (denying motion to reduce sentence in light of COVID-19 because defendant failed to exhaust his administrative remedies); *United States v. Rumley*, No. 4:08-cr-00005, Dkt. No. 190, at 2-3 (W.D. Va. Apr. 8, 2020) (Kiser, J.). As the Third Circuit recently explained, where thirty days have not passed following presentation of a request to a warden, the statute "presents a glaring roadblock foreclosing compassionate release at this point." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

And given the plain language and purpose of the statute, the requirements for filing a sentence reduction motion—including the requirement that a defendant

exhaust administrative remedies or wait thirty days before moving in court for compassionate release—are properly viewed as jurisdictional. Indeed, § 3582(c) expressly states that a "court may not modify" a term of imprisonment except in enumerated circumstances. 18 U.S.C. § 3582(c). The statute thus "speak[s] to the power of the court rather than to the rights or obligations of the parties," *Landgraf v. USI Film Prods.*, 511 U.S. 244, 274 (1994) (citation omitted), delineating "when, and under what conditions," a court may exercise its "'adjudicatory authority,'" *Bowles v. Russell*, 551 U.S. 205, 212-13 (2007) (quoting *Eberhart v. United States*, 546 U.S. 12, 16 (2005) (per curiam)). That conclusion is reinforced by the courts' historical powerlessness to modify a sentence after the expiration of the term at which it was entered. *See United States v. Mayer*, 235 U.S. 55, 67-69 (1914); *United States v. Welty*, 426 F.2d 615, 617-618 & n.8 (3d Cir. 1970). Indeed, the Supreme Court has explained that "'a judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances[,]" *Dillon v. United States*, 560 U.S. 817, 825 (2010); and that finality is "essential to the operation of our criminal justice system[,]" *Teague v. Lane*, 489 U.S. 288, 309 (1989) (plurality opinion). Section 3582(c) thus affords courts authority to modify a petitioner's sentence *that the courts otherwise do not have*—meaning the statutory requirements circumscribe the courts' jurisdiction to even provide the requested relief and they can only act to modify sentences in strict conformance with

6

that newfound legislative grant of authority.[7] Simply put, this Court lacks the power to grant a motion for compassionate release if the petitioner has not first sought relief through the BOP.

Here, Mr. Courtney claims in his brief that he submitted a request for release on April 7, and a subsequent request for home confinement on April 17. *See* Mot. at 32. But FCI Elkton has no record of Mr. Courtney requesting compassionate release. *See* Ex. 1. And Mr. Courtney has not submitted any evidence of his request, even though he bears the burden of proving that he's entitled to release. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014). His motion for release, therefore, should be denied; he has failed to carry his burden and the Court cannot consider his request until he first seeks relief through the BOP.

Importantly, the government's insistence that Mr. Courtney properly exhaust his administrative options is not meant to evince any sort of disregard for the difficult

---

[7] A number of courts have recognized that the prerequisites for relief under Section 3582(c)(2), which allows a sentence reduction based on a retroactive guideline amendment, are jurisdictional. *See, e.g., United States v. Garcia*, 606 F.3d 209, 212 n.5 (5th Cir. 2010); *United States v. Williams*, 607 F.3d 1123, 1125-26 (6th Cir. 2010); *United States v. Auman*, 8 F.3d 1268, 1271 (8th Cir. 1993); *United States v. Austin*, 676 F.3d 924, 930 (9th Cir. 2012), *overruled on other grounds by United States v. Davis*, 825 F.3d 1014 (9th Cir. 2016); *United States v. Graham*, 704 F.3d 1275, 1279 (10th Cir. 2013); *United States v. Mills*, 613 F.3d 1070, 1078 (11th Cir. 2010); *see also United States v. Higgs*, 504 F.3d 456 (3d Cir. 2007) (canvassing history of judicial treatment of Rule 35 as jurisdictional and holding that Rule 35(a) and Section 3582(c)(1)(B) remain jurisdictional after *Bowles*). Other courts disagree. *See, e.g., United States v. Johnson*, 732 F.3d 109, 116 n.11 (2d Cir. 2013); *United States v. Taylor*, 778 F.3d 667, 670 (7th Cir. 2015).

circumstances Mr. Courtney faces. The government does not underplay Mr. Courtney's concerns; indeed, the government recognizes both the unprecedented and dangerous character of the COVID-19 disease as well as the particularly difficult situation at FCI Elkton where there are numerous confirmed cases of the disease and multiple inmates have died.

But administrative review by the BOP—i.e., the entity with the most information about the prisoners, the conditions of their confinement, and the ongoing challenges COVID-19 presents in a prison environment—remains a critical part of determining when and where release is a suitable option. Indeed, the solution to the concerns raised by Mr. Courtney is not to exclude the BOP from reviewing applications for compassionate release. There are many challenging factors to consider during this unprecedented pandemic, and the BOP should have the opportunity to assess those factors during the statutorily required review period. For example, notwithstanding the current pandemic, the BOP must carry out its charge to incarcerate sentenced criminals to protect the public. It must consider the effect of a mass release on the safety and health of both the inmate population and the citizenry. It must marshal its resources to care for inmates in the most efficient and beneficial manner possible. It must assess release plans, which are essential to ensure that a defendant has a safe place to live and access to health care in these difficult times. And it must consider myriad other factors, including the availability of transportation for inmates (at a time when interstate transportation services often used by released inmates are providing reduced, if any, service), and of supervision

of inmates once released (at a time that the Probation Office has necessarily cut back on home visits and supervision).

For all of these reasons, BOP is best positioned to determine the proper treatment of the inmate population as a whole, taking into account both individual considerations based on an inmate's background and medical history, and more general considerations regarding the conditions and needs at particular facilities. The provision of § 3582(c)(1)(A) prioritizing administrative review therefore makes sense not only in the ordinary case, but also at this perilous time. As the Third Circuit stated, "[g]iven BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Raia*, 954 F.3d at 597.

Mr. Courtney's failure to timely present the request for a reduction in sentence is fatal to his request.   *See id*. (finding failure to meet exhaustion requirement "presents a glaring roadblock foreclosing compassionate release at this point"). In accordance with the First Step Act, the BOP should be given the opportunity to first consider Mr. Courtney's request for release, particularly in light of BOP's response to the pandemic and the Attorney General's mandates described above.

## 2. Although Mr. Courtney Has Shown Extraordinary and Compelling Circumstances, the § 3553 Factors Weigh Against a Sentencing Reduction

Even if the Court determines that Mr. Courtney has satisfied the exhaustion requirement—i.e., if he proves that he did, in fact, submit a request for relief that the warden has not acted on—release is still unwarranted here given the nature of Mr. Courtney's crimes.

Section 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides, in part, that the "court may not modify a term of imprisonment once it has been imposed except that . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." For its part, the Sentencing Commission explained that the Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" *and* "the reduction is consistent with [the] policy statement." U.S.S.G. § 1B1.13. In addition, the Commission further explained that certain serious medical conditions—including terminal conditions or conditions that diminish the ability of the inmate to provide self-care—may qualify as "extraordinary and compelling" conditions that would justify release. *See id*. at App. Note. 1.

Mr. Courtney suffers from a variety of serious medical conditions, including diabetes and hypertension. *See* Mot. at 22-31 & Ex. C. And the CDC has recognized that these conditions place individuals at a higher risk of severe outcomes from COVID-19.[8] Accordingly, the government accepts and acknowledges that he has

---

[8] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited May 27, 2020).

demonstrated the existence of extraordinary and compelling circumstances, consistent with § 3582(c)(1)(A). Specifically, although these medical conditions would not, of their own accord, establish compelling and extraordinary circumstances in ordinary times, they are sufficiently exceptional in light of the ongoing pandemic.

But the existence of clear and compelling circumstances alone is not enough to justify Mr. Courtney's release. The Court must also consider whether Mr. Courtney is a danger to the community, along with the factors set forth in 18 U.S.C. § 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13; and those considerations favor Mr. Courtney's continued incarceration. For example, looking at the circumstances of the crime under § 3553(a)(1), Mr. Courtney bought and sold hundreds of grams of alpha-PVP while participating in a broad drug conspiracy between 2013 and 2015. *See* PSR ¶¶ 238-53. He ultimately pled guilty to only 564 grams, but evidence in this case indicate that he was involved with drug weights well in excess of that figure. *See*, *e.g.*, *id*. ¶ 240-41, 244, 248-49. Those sorts of serious crimes—with a far reaching impact on the community—warrant serious sanctions, even during a pandemic. *See* 18 U.S.C. § 3553(a)(2) (explaining that the sentence needs "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"). And house arrest, however difficult it has seemed during these extraordinary times, is not consonant with the seriousness of Mr. Courtney's offenses, or the sentences faced by others who participated in large-scale drug conspiracies. *See* 18 U.S.C. § 3553(a)(6) (sentence must reflect "the need to avoid unwarranted sentence disparities").

11

Moreover, although Mr. Courtney claims that his crimes did not involve violence, *see* Mot. at 32, he pled guilty to using and carrying a firearm in furtherance of the conspiracy, *see* Dkt. No. 371. And the evidence in the case indicated that he carried the firearm to protect himself during drug transactions and traded guns for drugs. *See*, *e.g.*, Tr. of Guilty Plea Hr'g., Dkt. No. 919, at 59-60; PSR ¶ 247. So although Mr. Courtney was not expressly charged with a violent act, his crimes nevertheless show that he poses a danger to the community if released, and that his continued incarceration is necessary "protect the public[.]" § 3553(a)(2)(C).

At bottom, these considerations outweigh the concerns raised by the COVID-19 pandemic, even accounting for the situation at Elkton. Not every prisoner can or should be released in light of the pandemic, and Mr. Courtney is not the sort of low-level drug offender or non-violent criminal (given his gun conviction) for whom release may be appropriate or advisable. His crimes were serious, and the underlying facts of his case indicate he's dangerous. Accordingly, Mr. Courtney's motion for release should be denied.[9]

## CONCLUSION

For all of the foregoing reasons, the United States respectfully requests that the Court deny Mr. Courtney's motion for compassionate release.

---

[9] In the event that the Court determines that Mr. Courtney should be released, the government requests his release be preceded by a 14-day quarantine to minimize any risk to the public.

Respectfully submitted,

THOMAS T. CULLEN
United States Attorney

s/ Jonathan Jones

Jonathan Jones
United States Attorney's Office
310 1st Street SW, Suite 906
Roanoke, VA 24011
(540) 857-2250
jonathan.jones2@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 29, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

s/ Jonathan Jones
Assistant United States Attorney

13